# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

## CASE NO. 11-60320-CIV-GOODMAN

### [CONSENT CASE]

JGT, INC.,

      Plaintiff,

v.

ASHBRITT, INC.,

      Defendant.

_____/

## SUMMARY JUDGMENT ORDER

This cause is before the Court on Defendant Ashbritt, Inc.'s Second Motion for Partial Summary Judgment. [ECF No. 79]. On May 23, 2012, Plaintiff JGT, Inc. filed its response [ECF No. 88], and on June 4, 2012 Ashbritt filed its reply [ECF No. 92]. On June 14, 2012, the Court held a hearing on this matter and ordered further supplemental briefing [ECF Nos. 96; 98]. The parties have filed the requested supplemental briefing [ECF Nos. 99; 100; 101; 102; 103]. On July 23, 2012, for the benefit of the parties and their ability to adequately prepare for the upcoming trial, the Court entered its Preliminary Summary Judgment Order [ECF No. 108].

The Court has reviewed the motion, the response, the reply, the parties'
supplemental briefing, and the record, and for the reasons stated below, the Court
**grants in part and denies in part** Ashbritt's motion.

## I. BACKGROUND

### A. Ashbritt Is Contracted To Help Clean Up Hurricane Katrina Debris

This action arose from the clean-up of the aftermath of Hurricane Katrina. The
United States Corps of Army Engineers (the "Corps") awarded Ashbritt a contract for
the removal and processing of debris from Hurricane Katrina in the State of Mississippi.
[ECF Nos. 81, ¶¶'s 1-2; 99, ¶¶'s 1-2].[1] Ashbritt set up four temporary disposal sites in
Jones County, Mississippi. [ECF Nos. 81, ¶ 4; 99, ¶ 4]. The temporary disposal site at
issue in this action is the site near Laurel Airport in Jones County (the "Site"). [ECF Nos.
81, ¶ 6; 99, ¶ 6]. Ashbritt originally subcontracted the management of the Site to a
company called Natco. [ECF Nos. 81, ¶ 5; 99, ¶ 5]. After an open fire broke out at the
Site, Ashbritt terminated its subcontract with Natco. [ECF Nos. 81, ¶¶'s 8-11; 99, ¶¶'s 8-
11]. Prior to Ashbritt's termination of its subcontract with Natco, 329,694 cubic yards of
debris had been delivered to the Site. [ECF Nos. 81, ¶ 7; 99, ¶ 7; 81-2].

---

[1]     ECF No. 81 is Ashbritt's Statement of Undisputed Material Facts In Support Of
Its Second Motion for Partial Summary Judgment. ECF No. 99 is Plaintiff's
Supplemental Statement of Undisputed Material Facts. [Plaintiff's original Statement of
Undisputed Material Facts [ECF No. 89] did not comply with Local Rule 56.1 and was
stricken].

### B. Ashbritt Subcontracts With JGT To Manage The Site

On October 9, 2005, Ashbritt entered into the Subcontract Agreement (the "Agreement") with JGT to manage the Site. [ECF Nos. 81, ¶ 12; 99, ¶ 12; 81-3]. Exhibits A and B to the Agreement set out the scope of JGT's work and payment schedule. [ECF No. 81-3, pp. 18-19]. According to Exhibits A and B, JGT was to perform the following three tasks at the Site: (1) site management; (2) grinding (i.e., grinding debris); and (3) site remediation. [*Id.*]. Exhibit B purports to set out the contract sum and payment schedule, and provides, in relevant part, that JGT was to be paid $3.00/cubic yard of debris, that the determination of cubic yards of debris would be "based on the net yardage hauled as determined by the USACE [the Corps] identified on the load tickets," and that Ashbritt would retain 10% from each payment to JGT ("retainage") to be disbursed at the conclusion of JGT's work. [*Id.* at p. 19]. As will be explained below, JGT and Ashbritt disagree as to whether the $3.00/cubic yard of debris in Exhibit B of the Agreement encompassed payment for all of JGT's work and disagree as to the meaning of "net yardage hauled."

### C. Ashbritt And JGT Sign An Amendment To The Agreement

**It is undisputed** that on December 15, 2005, JGT and Ashbritt signed an Amendment to the Agreement (the "Amendment"). [ECF No. 81-4]. The Amendment purported to incorporate the new contract between the Corps and Ashbritt and to amend only the contract sums in Exhibit B. [*Id.*]. More specifically, Exhibit B to the

3

Amendment provided that JGT would be paid: $1.25/cubic yard for site management; $1.25/cubic yard for grinding; and $0.50/cubic yard for site remediation. [ECF No. 81-4, p. 4]. Thus, Exhibit B to the *Amendment,* unlike Exhibit B to the *Agreement*, made clear that JGT would be paid a total of $3.00/cubic yard for site management, grinding, and site remediation. JGT admits that it signed the Amendment but disputes that Exhibit B to the Amendment is the same one that was attached when JGT signed and contends that the Amendment lacks consideration. [ECF Nos. 99, ¶ 24; 102, pp. 2-3].

### D. The Instant Lawsuit

On February 11, 2011, JGT filed its complaint. JGT alleged that Ashbritt breached the Agreement by failing to pay JGT the retainage, diverting work to other subcontractors, and paying less than the agreed rate for JGT's services. [ECF No. 1, ¶¶'s 25-28]. More specifically, JGT alleged Ashbritt breached the Agreement by only paying JGT $2.50/cubic yard for site management and grinding instead of the $3.00/cubic yard provided by the Agreement. [ECF No. 1, ¶ 13]. Regarding site remediation, JGT alleged that the Agreement did not set a price for site remediation and Ashbritt breached its oral agreement with JGT to pay $0.50/cubic yard for site remediation. [ECF No. 1, ¶ 14]. JGT's complaint did not mention or refer to the Amendment, however.

4

On January 12, 2012, the District Court[2] granted Ashbritt summary judgment on

JGT's claim that Ashbritt breached the Agreement by diverting work to other

subcontractors. [ECF No. 59, pp. 3-4]. The District Court, however, denied Ashbritt's

motion to the extent it argued that JGT's claim for site remediation fees was barred by

Florida's four-year statute of limitations for claims on *oral* contracts. [*Id.* at pp. 5-6].

Most relevant to the issues currently before the Undersigned, the District Court found,

based on the record and JGT's argument [ECF No. 51, pp. 4-5], that the parties executed

the Amendment and, as such, there was a disputed issue of fact as to whether a written

contract existed regarding site remediation. [ECF No. 59, p. 6]. On January 26, 2012, the

District Court clarified its summary judgment order [ECF No. 59] and stated that it did

not grant Ashbritt summary judgment on its defense argument that JGT's claims for

grinding and site management were barred by the statute of limitations. [ECF No. 65].

On May 3, 2012, Ashbritt filed the instant motion for partial summary judgment.

[ECF No. 79]. In short, Ashbritt claims that it is entitled to summary judgment on the

following theories and arguments: (1) JGT's claims for site management and grinding

fees are barred by Florida's five-year statute of limitations for written contracts; (2) JGT

released all of its claims by signing various Waiver and Release of Lien Upon Final

Payment and Indemnity Agreements (the "Releases") when accepting payments from

Ashbritt; (3) JGT was overpaid for site management; (4) JGT was overpaid for grinding;

---

[2]     The parties consented to this Court's jurisdiction on January 25, 2012 [ECF No. 63], and the District Court referred this matter to this Court. [ECF No. 64].

5

and (5) JGT's claim for site remediation was not supported by consideration and/or is barred by Florida's four-year statute of limitations. [*Id.*] Ashbritt did not move for summary judgment as to retainage, however.

## II.    LEGAL STANDARD

### A. Standard For Summary Judgment Generally

Summary judgment is appropriate when the pleadings, depositions, affidavits and exhibits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a),(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue of fact is "material" if it is a legal element of the claim under applicable substantive law which might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Allen*, 121 F.3d at 646. On a motion for summary judgment, the court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the non-moving party and determine whether the evidence could reasonably sustain a jury verdict for the non-movant. *Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646.

### B. Standard For Summary Judgment In Contract Disputes

Generally under Florida law, a court may decide a matter of contract interpretation on summary judgment. *See Voluisa Cnty. v. Aberdeen at Ormond Beach, L.P.*,

6

760 So. 2d 126, 131 (Fla. 2000).[3]  However, "when the terms of a written instrument are

disputed and rationally susceptible to more than one construction, an issue of fact is

presented which cannot properly be resolved by summary judgment." *Soncoast Cmty.*

*Church of Boca Raton, Inc. v. Travis Boating Ctr. of Fla., Inc.*, 981 So. 2d 654, 655 (Fla. 4th

DCA 2008) (internal citations and quotation marks omitted); *cf. Commercial Capital Res.,*

*LLC v. Giovannetti*, 955 So. 2d 1151, 1153 (Fla. 3d DCA 2007).

## III.   ANALYSIS

### A. There Are Disputed Issues Of Fact Regarding Whether JGT's Claims For Site Management And Grinding Fees Are Barred By The Statute Of Limitations

JGT alleges that Ashbritt breached the Agreement in October 2005 when it

unilaterally lowered the price from $1.50/cubic yard for grinding and $1.50/cubic yard

for site management to $1.25/cubic yard for each. [ECF Nos. 81, ¶ 35; 99, ¶ 35]. Thus,

Ashbritt argues in its summary judgment motion that JGT is bound by its admission,

and because this action was commenced in February 2011, Florida's five (5) year statute

of limitations (§ 95.11(2), Fla. Stat.) applies and bars the claim. [ECF No. 79, pp. 14-16].

First, both parties have taken inconsistent factual positions regarding this issue.

Ashbritt, in contrast to its current position, initially argued before the District Court that

its alleged breach occurred in June 2006 – the date of the last payment to JGT. [ECF No.

43, pp. 12, 14-20]. Despite JGT's later admission that the breach occurred in October

---

[3]       Florida law applies to the interpretation and enforcement of the Agreement and
the Amendment. *See* § 18.4 of the Agreement [ECF No. 81-3, p. 16].

2005, JGT's complaint does not in fact definitively reference October 2005 as the date of the breach. Rather, the complaint alleges that "Ashbritt breached the contract . . . from February to June 2006." [ECF No. 1, p. 4]. Thus, based on the statements in the party's prior pleadings, it appears that the breach would have occurred after June 2006 and, therefore, the instant lawsuit – filed in February 2011 -- would *not* be barred by § 95.11(2), Fla. Stat.

Second, Ashbritt and JGT admit they signed the Amendment. [ECF Nos. 81, ¶ 24; 99, ¶ 24]. Moreover, the Amendment has been made part of the record in this litigation and has been considered by the District Court. [ECF No. 59, p. 6]. The Amendment is clear that JGT was to be paid $1.25/cubic yard of debris for grinding and $1.25/cubic yard of debris for site management. [ECF No. 81-4, p. 4]. Thus, on its face, the Amendment, if valid, appears to eliminate JGT's allegations that Ashbritt breached the Agreement by paying less than $1.50/cubic yard. However, <u>at no point in this litigation has Ashbritt raised this argument</u> or even argued that the Amendment bars any of JGT's claims.

As a result of the foregoing, the Court finds that a review of the record reveals that there are genuine issues of fact as to when the breach occurred and declines to grant summary judgment on this issue.

## B. There Are Disputed Issues Of Fact And Law Regarding The Releases

In its motion, Ashbritt originally argued that by signing the Releases when it accepted payment, JGT released all of its claims against Ashbritt (except retainage). [ECF No. 79, pp. 4-7]. In response, JGT argued that the Releases were invalid because they were not supported by consideration. [ECF No. 88, pp. 1-3]. In its reply, at the hearing, and in its supplemental briefing, Ashbritt, in addition to its release argument, argued, **for the first time**, that the doctrine of accord and satisfaction under § 673.3111, Fla. Stat., or § 725.05, Fla. Stat., barred JGT's claims. [ECF Nos. 92, pp. 2-6; 101].

### 1. Release

"Under Florida law, a release must be supported by consideration." *S. Pan Servs. Co. v. S.B. Ballard Constr. Co.*, No. 307-CV-592-J-33TEM, 2008 WL 3200236, at *9 (M.D. Fla. Aug. 6, 2008) (internal citations omitted). "[U]nder Florida law, the payment of a preexisting debt does not constitute consideration." *Air Prods. & Chems., Inc. v. La. Land & Exploration Co.*, 806 F.2d 1524, 1529 (11th Cir. 1986).

Ashbritt first argues that the Releases here are like the releases in *Spectrum Interiors, Inc. v. Exterior Walls, Inc.*, 2 So. 3d 1093 (Fla. 5th DCA 2009), and urges this Court to adopt a similar approach and find that JGT released all of its claims by signing the Releases. [ECF No. 79, pp. 5-6]. In *Spectrum*, however, that court only held that the sub-subcontractor was barred from bringing its claims that arose on or before September 30, 2003 against the subcontractor, because it had **assigned** those claims to

9

the contractor. *Id.* at 1095. That court did not hold that the release barred the sub-subcontractor's claims. In fact, on remand, the sub-subcontractor later prevailed in a suit for damages for non-payment by the subcontractor for claims arising after September 30, 2003. *Spectrum Interiors, Inc. v. Exterior Walls, Inc.*, 65 So. 3d 543, 545 (Fla. 5th DCA 2011), *reh'g denied* (July 15, 2011). Accordingly, the Court declines to grant Ashbritt summary judgment on this basis.

Second, in response to JGT's argument that there was no consideration for the Releases, Ashbritt alleges that there was consideration because it refrained from terminating the Agreement. [ECF No. 92, p. 4]. Ashbritt, however, fails to cite to any facts in the record that support its assertion that it did not terminate the Agreement because JGT signed the Releases, or that it even considered terminating the Agreement. Moreover, Ashbritt fails to cite to any legal authority that supports the proposition that not terminating a contract is sufficient consideration **for a release**. As a result, the Court declines, at this time, to grant summary judgment to Ashbritt on this basis. *See S. Pan Services Co.*, 2008 WL 3200236, at *8-9 (declining to grant summary judgment to contractor because genuine issues of material fact as to consideration for the releases signed by the subcontractor).

Finally, Ashbritt argues that no consideration was required under § 671.107, Fla. Stat. The section caption of § 671.107 states: "Waiver or Renunciation of Claim or Right **After Breach**." (emphasis added). Under § 671.109, Fla. Stat., section captions are

10

deemed part of Florida's adoption of the Uniform Commercial Code ("UCC"). Thus, on its face, the statute arguably appears to only apply to the release or waiver of a claim after a breach.[4] Here, because of the inconsistent positions of the parties, it is not clear *when* the alleged breaches of the Agreement occurred so as to give effect to the Releases under § 671.107. For example, as to site management, if the Court finds at trial that the Amendment governs and that "net yardage hauled" refers to all debris delivered to the Site, then the breach would have occurred when Ashbritt refused to pay for the additional debris -- well after the Releases related to site management were signed. Accordingly, the Court finds that there are genuine issues of material fact and declines to grant summary judgment on this legal basis.

### 2. Accord and Satisfaction Under § 673.3111, Fla. Stat.

Section 673.3111(1) provides in relevant part:

> If a person against whom a claim is asserted proves that that person in good faith tendered an **instrument** to the claimant as full satisfaction of the claim, that the amount of the claim was unliquidated or subject to a bona fide dispute, and that the claimant obtained payment of the **instrument** . . . (emphasis supplied).[5]

---

[4]     Ashbritt cited to no legal authority to support its argument. The Court has conducted its own supplemental research and finds that the case law on this particular UCC provision (former UCC 1-107, current UCC 1-306) and this issue is sparse. As a result, the Court makes clear **that it is not holding** that as a matter of law that § 671.107 applies only to releases and waivers of a claim after a breach.

[5]     As a threshold matter, it is unclear if the Releases here constitute "instruments" within the meaning of § 673.1041, Fla. Stat., so as to even have § 673.3111 apply. Ashbritt cites to no legal authority holding that similar releases have been found to be

At this point in time, there is insufficient evidence in the record to determine if the amount owed to JGT was/is unliquidated or liquidated. If the Court determines that the amount owed to JGT was/is liquidated, then § 673.3111 would be inapplicable and § 725.05 could very well apply. Therefore, the Court declines to grant summary judgment to Ashbritt on this legal basis.

3. Section 725.05, Fla. Stat.

Section 725.05 provides in relevant part:

> When the amount of any debt or obligation is liquidated, the parties may satisfy the debt by written instrument other than by endorsement on a check for less than the full amount due.

In *Berman v. U.S. Fin. Acceptance Corp.*, 669 So. 2d 1116, 1117 (Fla. 4th DCA 1996), the appellee informed the appellant that the $4,395 due and owing to the appellant would not be paid unless the appellant signed a release. *Id.* at 1117. The appellant signed the release but received a check for five hundred dollars less. *Id.* The Fourth District Court of Appeals held that the release was valid as it was a written instrument within the meaning of § 725.05 and the debt, $4,395, was liquidated, i.e., an amount or

---

instruments under § 673.3111. The Court's independent research has found that at least one Florida court has held that a similar release was *not* an instrument. *Berman v. U.S. Fin. Acceptance Corp.*, 669 So. 2d 1116, 1117 (Fla. 4th DCA 1996) ("The memorandum of agreement in this case which constitutes the release is not a negotiable instrument within the meaning of section 673.1041(2), and thus section 673.3111 does not apply to its terms."). However, because there is insufficient evidence in the record to determine if the amount owed to JGT was/is unliquidated or liquidated, the Court need not decide this issue now.

debt that is settled or determined, "esp. by agreement." *See Black's Law Dictionary* 1015
(9th ed. 2009).

Here, at this point in time, there is insufficient evidence in the record as to the
**total** amount determined by agreement or otherwise to be due and owing to JGT. For
example, unlike in *Berman*, no party here has advanced that it was agreed that JGT was
owed a total of $X but accepted a lesser amount $Y and signed the Releases. As a result,
the Court finds that there are genuine issues of material fact and declines to grant
summary judgment to Ashbritt. But the Court observes that at trial it very well may be
the case that the debt owed to JGT was fixed/liquidated and that the Releases should
therefore be given effect pursuant to § 725.05.

## C. There Are Disputed Issues Of Fact Regarding JGT's Site Management Fees

Ashbritt argues that JGT is only entitled to be paid for site management on the
324,554 cubic yards of debris delivered *after* JGT took over the Site. Thus, Ashbritt
argues that because JGT has been paid site management fees for 410,553.02 cubic yards
of debris, JGT has in fact been *overpaid* and Ashbritt is entitled to summary judgment.
According to Ashbritt, the Agreement is clear that JGT was to be paid for site
management "based on the net yardage hauled as determined by the" Corps. Ashbritt
believes that "net yardage hauled" refers only to the cubic yards of debris delivered
*after* JGT took over the Site. [ECF No. 79, p. 7]. Moreover, Ashbritt points to the

13

deposition testimony of Charles Tigert, Jr. (JGT's corporate representative and owner) because it contends the testimony supports its argument. [ECF No. 81-1, p. 18].

JGT argues that "net yardage hauled" refers to *all* cubic yards of debris delivered to the Site (654,248), *regardless* of when JGT assumed management of the Site. [ECF Nos. 81-16, pp. 2-3; 88-1, p. 2]. The thrust of JGT's argument is that it was required to perform site management services for all of the debris delivered to the Site, not just the debris delivered after it took over. [*Id.*]. Moreover, JGT points out that although Ashbritt originally refused to pay JGT for any debris that had been delivered to the Site before JGT took over, after JGT protested the non-payment, Ashbritt paid for 100,000 cubic yards of debris that had been delivered before JGT took over the Site. [ECF No. 88-1, p. 2].

The Court finds that there are genuine issues of material fact as to the meaning of the relevant contractual term. For example, if Ashbritt believes the Agreement is clear that JGT was not entitled to payment for debris delivered before JGT took over the Site, then why did it pay JGT for 100,000 cubic yards of that debris? Ashbritt provides no explanation nor does it rebut JGT's version of these facts. As a result, the Court finds that summary judgment is not appropriate as to JGT's site management fees. *See Soncoast Cmty. Church of Boca Raton, Inc. v. Travis Boating Ctr. of Fla., Inc.*, 981 So. 2d 654, 656 (Fla. 4th DCA 2008) ("The very fact that both parties interpreted the [contract] to

mean radically different things is an indication that this matter was not appropriate for summary judgment.").

### D. Ashbritt Is Entitled To Summary Judgment On JGT's Claims For Grinding Fees

JGT is entitled to be paid for the amount of cubic yards of debris that JGT actually processed. [ECF Nos. 81, ¶ 66; 99, ¶ 66; 88-1, ¶ 16]. A total of 654,248 cubic yards of debris were delivered to the Site, 329,694 cubic yards were delivered to the Site prior to JGT's management and 324,554 cubic yards after. [ECF Nos. 81, ¶¶'s 7, 54; 99, ¶¶'s 7, 54; 81-2].

Of the 329,694 cubic yards of debris delivered prior to JGT's management, the parties initially disagreed as to how much of that debris was destroyed prior to JGT's management. The Corps estimated that only 93,128 cubic yards of debris were left to be processed. [ECF No. 81-2]. JGT at first alleged, without any factual support from the Corps or otherwise,[6] that there was in fact 150,000 cubic yards of debris left. [ECF Nos. 81-1, p. 22; 81-16, p. 3]. JGT, however, later admitted that only 93,128 cubic yards of debris were left. [ECF No. 99, ¶ 70].

Of the 324,554 cubic yards of debris delivered after JGT assumed management of the Site, 251,454 cubic yards were processed by other subcontractors. [ECF Nos. 81, ¶

---

[6]     According to the deposition testimony of Mr. Tigert, Jr., JGT was supposed to produce a survey supporting its factual assertion that 150,000 cubic yards of debris remained in the Site. [ECF No. 81-1, pp. 19-20]. JGT never produced that survey and later conceded that only 93,128 cubic yards of debris was left. [ECF No. 99, ¶ 70].

15

73; 81-18; 99, ¶ 73]. As a result, of the cubic yards delivered after JGT took over management of the Site, JGT could have processed only 73,100 cubic yards of debris (324,554 - 251,454 = 73,100).

A simple calculation shows that JGT could have ground at most only 166,288 cubic yards of debris (73,100 + 93,128 = 166,228). JGT was in fact paid for 247,641.9 cubic yards of debris at \$1.25/cubic yard, for an approximate total of \$309,552 (247,641.9 x \$1.25 = \$309,552.375). [ECF Nos. 81, ¶ 67; 99, ¶ 67]. Even if JGT was paid at \$1.50/cubic yard (the amount it seeks) for the actual debris it processed (166,288 cubic yards), JGT has still been overpaid (166,288 x \$1.50 = \$249,432 < \$309,552). Accordingly, the Court finds that there are no genuine issues of material fact as to JGT's grinding fees and Ashbritt is entitled to summary judgment.

### E. There Are Disputed Issues Of Fact Regarding JGT's Site Remediation Fees

The parties signed the Agreement in October 2005. [ECF Nos. 81, ¶ 12; 99, ¶ 12] JGT alleges that the price term included in the Agreement (\$3.00/cubic yard of debris) did not include JGT's services for site remediation. [ECF No. 1, ¶ 13]. Rather, JGT has alleged that Ashbritt breached a later **oral agreement in 2005** to pay JGT \$0.50/cubic yard for site remediation fees. [*Id.* at ¶ 14]. Accordingly, Ashbritt argues that taking JGT's allegations at face value, JGT's claim is barred by § 95.11(3), Fla. Stat. (Florida's four-year statute of limitations), and that Ashbritt is consequently entitled to summary

judgment on this issue. [ECF No. 79, pp. 19-24]. The Court would be inclined to agree with Ashbritt **but for the Amendment.**

Ashbritt and JGT agree that they signed the Amendment. [ECF Nos. 81, ¶ 24; 99, ¶ 24]. "In the event of any conflict with the Agreement," the Amendment prevails. [ECF No. 81-4, p. 2]. Exhibit B to the Amendment specifically sets out that JGT was to be paid $0.50/cubic yard for site remediation. [*Id.* at p. 4]. Finally, the Amendment is part of the record before this Court and the District Court considered it in declining to grant Ashbritt summary judgment on this issue in Ashbritt's earlier motion for summary judgment. [ECF Nos. 81-4; 59, p. 6]. The parties, however, disagree as to the legal effect that the Amendment should have.

Ashbritt would have the Court ignore the Amendment and grant it summary judgment on the basis of JGT's claim that Ashbritt breached an oral contract -- despite the Amendment's existence in the record, despite Ashbritt's role in introducing the Amendment into the record, and despite the District Court's earlier reliance on the Amendment in denying Ashbritt's exact argument.

The Court views that approach as illogical and unpersuasive.

JGT, for its part, has decided to strategically change its position with the Court regarding the Amendment. On the one hand, JGT argues that it signed the Amendment and thus it is clear that its claim for non-payment of site remediation is based on a **written** instrument and thus not barred by Florida's four-year statute of limitations

17

(which would apply to a breach of an oral contract). [ECF No. 103, pp. 2-3]. On the other hand, JGT argues that the Amendment should *not* be given legal effect because Exhibit B to the Amendment, which contains the contract sums, was not in the same form as it was when JGT signed it or the Amendment lacks consideration. [*Id.* at p. 4]. Essentially, JGT would like the Court to find the Amendment valid for statute of limitations purposes but not for damages purposes.

The reason for JGT's inconsistent position is clear: if JGT admits that the Amendment is valid, then JGT appears to be entitled to the $0.50/cubic yard of debris for site remediation it argues for,[7] **but** it is also entitled to only $1.25/cubic yard of debris for site management and $1.25/cubic yard of debris grinding -- which is *less* than the $1.50/cubic yard of debris it seeks for each of those tasks. If, however, JGT admits that the Amendment is not valid because it lacks consideration or because Exhibit B was not attached, then JGT's claim for site remediation based on an oral agreement appears to be barred by § 95.11(3), Fla. Stat. Thus, JGT has decided to obfuscate the issue with the hopes of somehow prevailing on its inconsistent arguments. Unfortunately for JGT, the Court will not allow this to occur. The Court will separately issue an order requiring JGT to clarify its position.

---

[7]     Of course, the amount of cubic yards of debris that JGT is to be paid for site remediation remains an issue for trial.

18

Based on the record above, the Court finds that there are genuine issues of fact regarding JGT's claim for site remediation fees and declines to grant Ashbritt summary judgment on this issue.

## IV. CONCLUSIONS

The Court **grants** Ashbritt summary judgment as to JGT's grinding fees and **denies** the remainder of Ashbritt's motion.

ORDERED in Chambers, in Miami, Florida, July 31, 2012.

Jonathan Goodman
United States Magistrate Judge

Copies furnished to:
All Counsel of Record